**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

MARC LAW
CODY HAMBLIN
DENNIS HULL
MICHAEL ABATANTUNO
DARLENE ACOSTA-PEREZ
VINCENT ADDEO
MUNEER AHMED
JOHN ALDAHONDO
JASON ALLARD
JOHN ALLEGRETTI
NATASHA ALLEN
VICTOR ALMENAS
DANIEL ALTARO
JASON ALVARADO
WANDA ALVAREZ
DONOVAN ALVES
CHRISTOPHER AMELIO
FRANK AMON
ANTHONY AMORE
ANTHONY ANDERSON
JUAN ANGULO
JEAN-CLAUDE AOUN
TIMOTHY ARASIN
MICHAEL ARBOLEDA
ANDREW CONTRINO
JILLIAN WHITE,


Plaintiffs,



    v.


CITY OF NEW YORK,

    Defendant.

**Case No.** _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiffs, by and through their counsel, McGillivary Steele Elkin LLP and Spivak Lipton LLP, for their complaint against the City of New York state as follows:

### INTRODUCTION

1.     Plaintiffs are current and former employees of the Defendant, City of New York ("the City"), who work or have worked in the position of Sanitation Officer for the Department of Sanitation ("DSNY"). Plaintiffs bring this action for a declaratory judgment, back pay and other relief pursuant to 29 U.S.C. § 207 and 29 U.S.C. § 216(b) to remedy the Defendant's willful and unlawful violations of federal law complained of herein.

2.     Plaintiffs bring this action against Defendant as a collective action in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") because of Defendant's unlawful deprivation of Plaintiffs' right to overtime compensation with the FLSA. The Plaintiffs are similarly situated to each other because they have been subject to the same policies and/or practices that violate the FLSA whereby the Defendant suffered or permitted Plaintiffs to perform uncompensated overtime work before and after their paid shifts, and Defendant has paid Plaintiffs and all those similarly situated various payments such as night shift differentials and longevity pay in addition to Plaintiffs' regular pay, but Defendant has failed to include these additional payments in the regular rate of pay at which Plaintiffs' overtime has been paid. Defendant also systemically fails to pay overtime compensation in a timely manner.

### PARTIES

3.     Plaintiffs, listed in Exhibit A hereto, have given their written consent to be Party-Plaintiffs in this action pursuant to 29 U.S.C. § 216(b). Their written consent forms are attached as Exhibit A.

2

4.    Each of the Plaintiffs in this action while employed by Defendant has been an "employee" within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(e)(1).

5.    Defendant is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). The City has a principal office and place of business located at Broadway and Park Row, New York, NY, 10007, and may be served with process by serving the Office of Corporation Counsel, 100 Church Street, New York, NY 10007.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

7.    Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTS

8.    Plaintiffs are, and have been at all times material, employed by Defendant in the DSNY in the position of Sanitation Officer, also referred to as Sanitation Supervisor, at locations across New York City. In this position, their principal job duties, like the principal job duties of all others similarly situated, include, but are not limited to: determining routes for garbage trucks, street sweepers, and snowplows; creating cards that allow commercial garbage trucks to operate in residential neighborhoods; monitoring garbage truck routes to ensure garbage is being collected; responding to 311 calls for unsanitary conditions; ticketing derelict vehicles; responding to accidents; logging tickets issued to derelict vehicles; logging responses to 311 calls; logging fuel, mileage, and maintenance metrics; conducting fuel audits; overseeing fuel deliveries; overseeing vehicle maintenance; overseeing the allocation of vehicles and manpower across garages and routes; cataloging equipment associated with particular vehicles; allocating workers and

equipment based on the needs for a particular shift; and logging the completed routes on a given day.

9.    For example, at all times material, Marc Law has worked for Defendant as a Sanitation Officer assigned to the DSNY's Staten Island Borough Office, located at 2500 Richmond Ave., Staten Island, NY 103014; Plaintiff Cody Hamblin has worked as a Sanitation Officer assigned to DSNY's Queens East Garage 13 located at 153-67 146th Ave., Jamaica, NY 11434; and Plaintiff Dennis Hull as worked as a Sanitation Officer assigned to DSNY's Hamilton Ave. Marine Transfer Station located at 500 Hamilton Ave., Brooklyn, NY 11232.

10.    While working as Sanitation Officers, Plaintiffs and all others similarly situated routinely work over 40 hours a week. However, the City fails to compensate Plaintiffs for all hours worked over 40 in a workweek at a rate of one and one-half times their regular rates of pay.

11.    Notably, Defendant has determined that the "normal shifts" for Sanitation Officers shall be shifts of eight (8) hours in length, and that the "work week shall consist of 40 hours, consisting of five (5) eight (8) hour days, exclusive of Sundays." *Collective Bargaining Agreement between the City of New York and the Sanitation Officers Association, Local 444, SEIU, AFL-CIO* ("CBA"), Art. VII § 1(b), (e). The City compensates Plaintiffs based off these 8-hour "normal" shifts.

12.    However, under the CBA every Sanitation Officer is actually scheduled to work five (5) shifts of eight (8) hours and 15 minutes per week. *Id.*, Art. VII § 1(a) ("Every Employee shall be scheduled to work eight hour and fifteen-minute shifts[.]").[1] As such, Plaintiffs and all others similarly situated are required to arrive 15 minutes before the start time of their "normal,"

---

[1] The Collective Bargaining Agreement can be accessed here:
https://www.nyc.gov/assets/olr/downloads/pdf/collectivebargaining/sanitation-officers-07-02-2019-06-24-2023.pdf (last accessed June 5, 2026).

eight-hour shifts, and begin working. This arrangement continues notwithstanding the new economic agreement reached between the Sanitation Workers' Union and the City in October 2023.

13.    Plaintiffs and all others similarly situated are not compensated for these additional 15 minutes that they work every day on every shift. Instead, they are compensated for only the five (5), eight (8) hour shifts of work per week. Therefore, each week they perform, but are not compensated for, an additional one hour and 15 minutes of regularly scheduled, required overtime work.

14.    The City also fails to compensate Plaintiffs and those similarly situated for additional time, outside of these required 15 minutes, that they work before the start of their scheduled shifts and after the end of their scheduled shifts. Plaintiffs spend this uncompensated time performing the job duties enumerated in Paragraph 8 as well as certain other necessary work activities before starting their scheduled shifts.

15.    The City knows or should know that Plaintiffs and those similarly situated begin working well in advance of the mandatory15 minutes of pre-shift time, and after the end of their scheduled shifts because Plaintiffs either electronically record their work time via Web Clock, or, if assigned to a garage, record their work time in a "blotter" maintained at each garage.

16.    The City knows or should know that Plaintiffs and those similarly situated begin working well in advance of the mandatory 15 minutes of pre-shift time, and after the end of their scheduled shifts because Plaintiffs' supervisors, Superintendents, are in regular contact with the Sanitation Officers prior to and after their paid shift times.

17.    While working as Sanitation Officers, Plaintiffs and all others similarly situated are compensated for hours worked over 40 in a workweek only if the overtime hours are pre-approved.

Such "pre-approved" overtime does not include the additional 15 minutes that Plaintiffs and all others similarly situated must work each day, nor does it include the time in excess of the pre-shift 15 minutes and time after the scheduled shift ends; the City categorically treats that time as non-compensable.

18.    Even when the City *does* compensate Plaintiffs for overtime hours that were pre-approved, the City systemically fails to pay Plaintiffs for this overtime work at the correct regular rate of pay because Defendant fails to include, among other things, night shift differentials and longevity pay in the rate at which overtime is paid.

19.    When the City does compensate Plaintiffs for pre-approved overtime hours, it often fails to pay them in a timely manner (i.e., failing to pay overtime within 26 days of the work being performed).

### ***Defendant's Fair Labor Standards Act Violations are Willful***

20.    While Defendant knows or should know how much time Plaintiffs work each shift because Plaintiffs record their time in a "blotter," Web Clock, or other form of log, Defendant does not use these time entries to pay Plaintiffs. Plaintiffs, and all others similarly situated, write down, either in a blotter, or depending on assignment, electronically, the precise time that they begin working before their scheduled shift time and the time they stop working after their scheduled shift time, tracking their working hours on a minute-by-minute basis. However, Defendant fails to pay the Sanitation Officers on a minute-by-minute basis for this recorded work time. This is because Defendant utilizes a program called "CityTime" to administer and calculate the pay of Plaintiffs and all others similarly situated despite being on notice, through the "blotter" or Web Clock time entries, of the precise amount of extra time that Plaintiffs and all others similarly situated work each day.

21.    When Defendant programmed and implemented CityTime, it adopted a policy of utilizing a "pay-to-schedule" system (i.e., one that, by default, pays employees for their scheduled work hours) rather than a "pay-to-punch" system (i.e., one that, by default, pays employees for all the time between punch in and punch out). Here, this policy treats Plaintiffs' "normal" schedule of eight (8) hours per day, five (5) days a week as their compensable work time. As such, although all minutes of Plaintiffs' pre-shift and post-shift work time are captured by Defendant in the blotter or via Web Clock and reviewed by Plaintiffs' supervisors and by other DSNY personnel, Plaintiffs and all others similarly situated are paid for only their "normal shifts" of eight hours. *See supra* ¶ 11; CBA Art. VII § 1(b), (e). Any work occurring before or after eight (8) hours in a shift is not captured or paid out via CityTime unless it is overtime that has been pre-approved.However, DSNY does not consider the additional 15 minutes of overtime Plaintiffs are scheduled to work each day in addition to their eight-hour "normal shift" to be such "pre-approved overtime," meaning Plaintiffs also are not compensated for this scheduled time.

22.    Defendant is aware that its "pay-to-schedule" system fails to capture Plaintiffs' actual working hours and fails to pay employees for compensable work time. For example, in *Perry v. City of New York,* the Second Circuit affirmed a jury verdict in favor of New York City EMTs and Paramedics (resulting in a $19,432,187 final judgment) for FLSA violations, including failing to pay for pre-shift and post-shift time recorded on CityTime, and a finding of willfulness. 78 F.4th 502 (2d Cir. 2023). Similarly, in the consolidated cases of *Foster* and *De La Cruz v. City of New York*, the trial court granted summary judgment for plaintiffs working at two other City agencies—the Administration for Children's Services and the Human Resources Administration, which both use the same CityTime software—on FLSA claims that the City had failed to compensate them for time worked before and after their scheduled shifts, where that time was

recorded as "uncompensated" in CityTime. 14 Civ. 9220 (PGG), 2017 WL 11591568, at *4, *23-25 (S.D.N.Y. Sept. 30, 2017).

23.    Defendant has repeatedly been held liable for failing to pay for pre- and post-shift work; it is well aware of its obligation to pay employees for overtime work that is suffered or permitted, even if employees do not make a request for overtime compensation for that work or if that time is not pre-approved by their superiors. *See, e.g.*, *Lawtone-Bowles v. City of New York*, 2020 WL 2832266, at *4 (S.D.N.Y. June 1, 2020) ("Defendant[] . . . argu[es] . . . that Plaintiffs failed to report the unpaid overtime . . . . The City has made this argument repeatedly in FLSA overtime litigation in this District and it has been unanimously rejected."); *Foster/De La Cruz*, 2017 WL 11591568, at *4, *23-25 (in consolidated cases, granting summary judgment for two sets of plaintiffs—employees of the City's Administration for Children's Services and Human Resources Administration, respectively—on FLSA claims that they worked uncompensated overtime of which their managers were aware, despite failure to seek pre-approval or otherwise request compensation); *Perez v. City of New York*, 12 Civ. 4914 (PAE), 2017 WL 4326105, at *12-13 (S.D.N.Y. Sept. 27, 2017) (denying summary judgment to City on defense to FLSA liability based on claim that plaintiffs failed to "report" overtime on the CityTime system where "ample record evidence" demonstrated that the City knew or had reason to know plaintiffs were working unreported overtime hours); *Worley v. City of N.Y. and NYPD*, 2020 WL 730326 (S.D.N.Y. Feb. 12, 2020) (granting summary judgment to plaintiffs for uncompensated pre-shift, post-shift, and meal period work about which the City was aware).

24.    Despite numerous decisions finding the City liable for failing to pay for overtime, the City has failed to make any adjustments in the CityTime system or in its own processes and procedures to properly capture and compensate its workers for compensable time that is logged,

but is improperly treated by the City as "uncompensated" time.

25.     Defendant has failed to investigate any work minutes captured in the blotters or Web Clock, including but not limited to what Sanitation Officers are doing during the time recorded in the blotters. Moreover, while Defendant periodically "audits" the blotters and/or logbooks at Plaintiffs' work locations making it aware that Plaintiffs are performing uncompensated pre-shift work, it has done nothing to ensure Plaintiffs are paid for this work.

26.     Additionally, the City knows that Sanitation Officers work a minimum of one hour and 15 minutes over 40 hours each week because it bargained for, and regularly schedules, the Plaintiffs to work eight (8) hours and 15 minutes each day, five (5) days a week. *See* CBA, Art. VII § 1(a) ("Every Employee shall be scheduled to work eight hour and fifteen-minute shifts[.]"); § 1(b), (e). Nevertheless, the City has failed to pay Plaintiffs and all others similarly situated for this regularly scheduled, mandatory overtime. Indeed, Defendant has disciplined employees for failing to report at least 15 minutes before the start time of their 8-hour "normal shifts."

27.     Plaintiffs' timekeeping and payroll data is in Defendant's exclusive possession and is not readily available to Plaintiffs. Plaintiffs do not personally record their work time on CityTime and instead record it in a "blotter" or logbook at the worksite. In addition, Plaintiffs' CityTime records and payroll data are "maintained across various [agency] branches, not available for download or electronic transfer, not text-searchable, not maintained for more than two years, and requires a separate search for each pay period." *Murray v. City of New York*, No. 1:16-cv-08072-PKC, Dkt. 66 (S.D.N.Y. Oct. 18, 2017) at 3.

28.     Defendant has failed to seek advice from the U.S. Department of Labor regarding whether its pay policies and practices comply with the FLSA.

29.     In fact, the former New York City Corporation Counsel has admitted, under oath,

9

that it is an employer's responsibility to ensure that employees get paid for work about which the employer is aware. *See Perry v. City of New York*, Case No. 1:13-cv-1015 (S.D.N.Y.), Dkt. 181 (Trial Transcript of October 16, 2019) at 969-70 ("[I]t would be . . . the supervisor's responsibility to ensure that the employees get paid for work about which the employer is aware; correct?" "Correct."). *See also Foster/De La Cruz*, 2017 WL 11591568, at *9 ("[T]he City's chief employment lawyer . . . concedes that where a manager observes an employee working [outside their shift], the manager has an obligation to make sure that employee is compensated for that time, even if the employee did not obtain pre-approval[.]") (citations omitted).

30.    However, at all times relevant, Defendant has failed and continues to fail to compensate Plaintiffs and those similarly situated for overtime work that is performed with their supervisors' knowledge and that is recorded on the "blotters," logbooks or elsewhere.

31.    The City has also previously been held liable for failure to properly calculate employees' regular rates of pay by failing to include premium payments, such as night shift differentials and longevity pay, in the rate at which overtime is paid to employees. *See, e.g.*, *Foster/De La Cruz*, 2017 WL 11591568, at *32-35; *Lawtone-Bowles v. City of N.Y.*, 2020 WL 2833366, at *5; *Lynch v. City of New York*, 291 F. Supp. 3d 537, 551-52 (S.D.N.Y. 2018). Despite these decisions, the City continues to fail to include premium payments in Plaintiffs' regular rates of pay.

32.    Defendant has not disciplined any Sanitation Officer for performing unpaid pre-shift or post-shift overtime work. However, as noted above, Defendant has disciplined Sanitation Officers for *not* arriving early during the additional 15-minute pre-shift period scheduled each and every workday to perform unpaid work.

33.    Despite multiple prior FLSA lawsuits on behalf of thousands of DSNY employees

10

regarding the City's failure to fully and timely pay overtime compensation on a systemic basis, the City has made no meaningful changes to its overtime, timekeeping, or payroll policies and practices including those applicable to Plaintiffs and similarly situated Sanitation Officers. *See, e.g., Wynne v. City of New York,* Case No. 1:23-cv-9955 (S.D.N.Y.) (FLSA case on behalf of Sanitation Officers); *Torres v. City of New York,* Case No. 1:24-cv-9304 (S.D.N.Y.) (same); *Mohamed v. City of New York,* Case No. 1:24-cv-6742 (S.D.N.Y.) (FLSA case on behalf of Sanitation Officers and Sanitation Superintendents); *Richards v. City of New York,* Case No. 1:23-cv-10220 (S.D.N.Y.) (FLSA case on behalf of Sanitation Workers); *Vitale v. City of New York,* Case No. 1:25-cv-1129 (S.D.N.Y.) (same).

### *Uncompensated Pre-shift and Post-shift Work Performed by Plaintiffs*

34.    While working as Sanitation Officers for DSNY, Plaintiffs and all others similarly situated routinely work over 40 hours a week. Sanitation Officers' "normal shifts" consist of five (5), eight (8)-hour shifts per week, totaling 40 hours per week. *See supra* ¶ 11; CBA, Art. VII § 1(b), (e). These are the work hours for which they receive pay. However, per DSNY rules and the CBA, Plaintiffs are in fact scheduled for five (5) shifts of eight (8) hours and 15 minutes in length each week. Thus, Plaintiffs and all others similarly situated are scheduled to perform, and do indeed perform, a minimum of 41 hours and 15 minutes of work per workweek, but absent any other pre-approved overtime, they are only paid for forty hours a week of work as a matter of DSNY policy.

35.    The additional 15 minutes that Plaintiffs must work each shift occur at the beginning of their shifts—they must arrive "early," or 15 minutes before the hour on which their "normal shift" starts, and face discipline if they fail to do so. Despite a requirement to report and begin working at least 15 minutes prior to the start of their "normal shift," Plaintiffs are not compensated for these 15 minutes of daily overtime work.

11

36.    Plaintiffs and all others similarly situated frequently work overtime in addition to their regular 40 hours of paid work per week performing their regular job duties, enumerated in Paragraph 8, for which they are not compensated. Specifically, in addition to the mandatory, daily-scheduled 15 minutes of pre-shift time, Plaintiffs routinely work additional time before and after their regular shifts. This pre-shift and post-shift work causes Plaintiffs and all others similarly situated to regularly work, without compensation, in excess of 40 hours in a workweek. However, Plaintiffs are only paid for 40 hours in a workweek.

37.    Plaintiffs and all others similarly situated regularly arrive even earlier than 15 minutes before the start of their "normal shift" to perform necessary and required pre-shift activities, including but not limited to the tasks listed in Paragraph 8, as well as other necessary and assigned tasks.

38.    For example, among other things, Sanitation Officers must fill out route cards that allow the commercial garbage trucks and other equipment to operate in residential areas and create a daily record of each truck's activity. These route cards cannot be filled out until right before a shift, because they include information that cannot be added to the cards until the routes are about to start, such as the names of the Sanitation Workers driving and operating the vehicle, the vehicle number, and the weather conditions.

39.    Sanitation Workers are able to exchange routes and trucks up to 15 minutes before the beginning of their shift, so Sanitation Officers must be present to oversee and finalize that process.

40.    The trucks and equipment cannot leave the garage until, among other things, the route cards are completed.

41.    Nevertheless, the Sanitation Officers are expected to have the trucks and equipment

for which they are responsible out into the field promptly after the start of the "normal shift." In order to have time to complete the tasks necessary to send the trucks and equipment out, including completing the route cards, Sanitation Officers are suffered or permitted to arrive and begin working even earlier than the 15 minutes before their "normal shifts."

42.    Sanitation Officers regularly must also continue working after the end of their regularly scheduled shifts. During this post-shift time, Sanitation Officers perform the tasks enumerated in Paragraph 8, including, but not limited to, filing and responding to 311 tickets, addressing issues and questions from Sanitation Workers, conducting fuel audits, and filling out reports.

43.    The amount of uncompensated work hours for which Plaintiffs and those similarly situated have not been paid can be identified through the Defendant's timekeeping system, the "blotters" and other form of logbooks, and through other work and pay records.

### *Rate at Which Overtime is Paid to Plaintiffs and All Others Similarly Situated*

44.    Plaintiffs and all others similarly situated routinely work pre-approved, additional shifts and other overtime for which they are paid, in addition to the daily unpaid overtime described above.

45.    While working as Sanitation Officers during the last three years, Plaintiffs and all others similarly situated have received certain payments for their work, including but not limited to night shift differentials and longevity pay. These payments are made pursuant to DSNY-wide policy, and/or the CBA, and thus they are paid to Plaintiffs and all others similarly situated. However, on occasions when Plaintiffs are paid overtime compensation, Defendant fails to include these payments in the regular rate of pay at which overtime is paid for purposes of calculating overtime payments owed to Plaintiffs.

46.     The failure to include these differential and premium payments in Plaintiffs' regular rates of pay means that when Plaintiffs receive paid overtime for working in excess of 40 hours in a week, they are paid at a rate for those overtime hours that is below the rate mandated by the FLSA.

47.     For example, during the past three years, Plaintiffs Law, Hamblin, and Hull have each earned night shift differential and/or longevity pay while working as Sanitation Officers during weeks in which they also were paid overtime compensation for working over 40 hours in the week. However, on these occasions and others, Defendant did not include these premium payments in the calculation of their overtime rates during those workweeks.

48.     Sanitation Officers employed by Defendant who receive premium payments pursuant to DSNY policy and/or the CBA, including Plaintiffs, are similarly situated and routinely work more than 40 hours in a workweek but are denied proper compensation for hours worked in excess of 40 hours because Defendant continues to fail to include these payments in the regular rate of pay upon which the Plaintiffs' overtime rate is based. The precise amount of improperly paid overtime received by each Sanitation Officer can be identified through the Defendant's timekeeping system and through other work and pay records.

### *Delayed Payment of Overtime*

49.     In those instances in which Defendant has compensated Plaintiffs and those similarly situated for working hours in excess of 40 hours a week, Defendant is required to "approve" requests for overtime compensation prior to paying Plaintiffs for that time. Due to delays in "approval" of overtime compensation by Defendant and its managers, or for other reasons that are unrelated to Defendant's ability to determine the amount of overtime compensation that is owed to the Plaintiffs, Defendant regularly pays Plaintiffs for their overtime work more than one

14

pay period after the date that Plaintiffs worked the overtime (e.g., more than 26 days after the overtime was worked).

50.     For example, Plaintiff Law worked approved overtime hours on February 11, 2026. However, to date, he has not been paid for this work and his overtime request remains "pending."

51.     Defendant has violated the basic principles of the FLSA by delaying Plaintiffs' overtime payments for working in excess of 40 hours a workweek by weeks, and in some cases months, with such delay not being reasonably necessary to compute Plaintiffs' overtime pay. The FLSA mandates that overtime compensation be paid on the regular payday for the period in which such workweek ends.

### *Collective Action Allegations*

52.     All Sanitation Officers employed by Defendant are similarly situated and regularly scheduled to work more than 40 hours in a workweek but are denied proper and timely compensation for hours worked in excess of 40, because Defendant fails to compensate them for the 15 minutes they must work in addition to their eight-hour "normal shift"—an additional 15 minutes of work per shift that Defendant requires from all Sanitation Officers. On top of the mandatory pre-shift 15 minutes each shift, Sanitation Officers regularly perform additional uncompensated pre- and post-shift work for which Defendant does not compensate them—work that involves the duties enumerated in Paragraph 8, and which is common across Plaintiffs and those similarly situated by virtue of their shared title of Sanitation Officer and their similar job duties.

53.     Plaintiffs perform this work pre- and post-shift, in part, due to Defendant's common policies, the applicable CBA, and plans relating to, *inter alia*, when trucks and equipment must be in the field by, and deadlines to close out tickets related to 311 calls.

54. Defendant universally fails to compensate all Sanitation Officers for their pre- and post-shift work.

55. As a condition of DSNY policy and/or the CBA, Sanitation Officers are all eligible to receive longevity pay, night shift differential, and other differentials and premiums when they meet certain conditions authorizing such pay.

56. When Sanitation Officers receive such premium and differential pay, Defendant universally fails to properly include their value in the "regular rate" used to determine the Sanitation Officers' overtime rate.

57. Defendant fails to include such differentials and premium payments in the calculation of the regular rate of pay of Plaintiffs and all others similarly situated pursuant to a systematic, Agency-wide practice.

58. Defendant also systemically fails to timely pay overtime compensation.

59. Sanitation Officers are all subject to Defendant's same practice and policy of using the CityTime timekeeping system, recording their start and end time in blotters and/or via Web Clock, and an Agency-wide payroll system to administer and calculate their pay.

60. All Sanitation Officers are similarly situated, and Plaintiffs will seek that this Court certify a collective composed of: All employees of Defendant who have worked in the position of Sanitation Officer in the DSNY since June 5, 2023.

## COUNT I

**FAILURE TO PAY OVERTIME FOR ALL HOURS PLAINTIFFS
ARE SUFFERED OR PERMITTED TO WORK IN VIOLATION
OF SECTION 7(a) OF THE FLSA, 29 U.S.C. § 207(a)**

61. Plaintiffs hereby incorporate by reference all preceding Paragraphs in their entirety and restate them herein.

62.     At all times material herein, during those workweeks in which Plaintiffs and all others similarly situated have worked hours in excess of 40 hours a week—which, absent leave taken, is every week, as Plaintiffs and all others similarly situated are scheduled to work a minimum of 40 hours per week as their "normal shifts," and are required to work an additional 15 minutes each day as part of their schedule, and are suffered or permitted to work even more than 15 minutes prior to and after their paid shifts—they have performed work activities, including but not limited to performing tasks enumerated in Paragraph 8 without compensation before the start of their scheduled shifts and after the end of their scheduled shifts, all of which is recorded in Defendant's blotters, work logs and/or Web Clock. This pre-shift and post-shift work has caused Plaintiffs and all others similarly situated to work in excess of 40 hours in a given week without proper overtime compensation in violation of the FLSA. Accordingly, as a result of these pay practices, Defendant has failed to provide Plaintiffs and all others similarly situated with the rights and protections provided under section 7(a) of the FLSA, 29 U.S.C. § 207(a).

63.     Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein. In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all hours employees are suffered or permitted to work in excess of 40 hours per week. Defendant has failed to comply with the overtime pay requirements of the FLSA by failing to compensate Plaintiffs and all others similarly situated for work that they have been suffered or permitted to work before the official start time of their "normal shifts" and after the official end of their "normal shifts."

64.     As a result of Defendant's willful and purposeful violations of the FLSA, there has

17

become due and owing to the Plaintiffs an amount that has not yet been precisely determined.[2] The employment and work records for the Plaintiffs are in the exclusive possession, custody and control of the Defendant and its public agencies and the Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to the Plaintiffs from which the amount of Defendant's liability can be ascertained.

65.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their back pay damages for the Defendant's failure to pay overtime compensation.

66.     Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT II

### FAILURE TO PROPERLY CALCULATE THE REGULAR RATE OF PAY IN VIOLATION OF SECTION 7(a) OF THE FLSA, 29 U.S.C. § 207(a)

67.     Plaintiffs hereby incorporate by reference all preceding Paragraphs in their entirety and restate them herein.

68.      Section 207(e) of the FLSA, 29 U.S.C. § 207(e), as well as the regulations of the

---

[2] Any Plaintiff who was also a Plaintiff in *Torres v. NYC,* Case No. 1:24-cv-9304 (S.D.N.Y.), seeks backpay and liquidated damages on Count I commencing December 2, 2025. Any Plaintiff who was a Plaintiff in *Wynne v. NYC*, Case No. 1:23-cv-9955 (S.D.N.Y) but not a Plaintiff in *Torres*, seeks backpay and liquidated damages on Count I commencing August 22, 2024. Any Plaintiff who did not participate in either *Wynne* or *Torres* seeks backpay and liquidated damages three years back from the date that the Plaintiff's consent to sue form was filed in Court for Defendant's willful violation of the FLSA.

U.S. Department of Labor, 29 CFR Part 778, *et seq*., require that all forms of remuneration be included in the rate at which FLSA overtime is paid, with some limited exceptions. Defendant has failed to include certain premium payments, including night shift differential pay and longevity pay, in Plaintiffs' regular rates of pay for purposes of computing overtime pay entitlements of Plaintiffs and all others similarly situated, resulting in Defendant paying Plaintiffs and all others similarly situated for overtime work at a rate that is below the rate mandated by the FLSA. Defendant's failure to include night differential pay and other forms of additional compensation in Plaintiffs' regular rate of pay violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.207(b).

69.    As a result of the Defendant's systemic, continuing, willful, and purposeful violations of the FLSA, there have become due and owing to the Plaintiffs and all others similarly situated an amount that has not yet been precisely determined.[3] The employment and work records for the Plaintiffs and all others similarly situated reflecting such ongoing violations are in the exclusive possession, custody and control of Defendant and its public agencies, and Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to Plaintiffs and all others similarly situated from which the amount of Defendant's liability can be ascertained.

---

[3] Any Plaintiff who was also a Plaintiff in *Torres v. NYC,* Case No. 1:24-cv-9304 (S.D.N.Y.), seeks backpay and liquidated damages on Count II commencing December 2, 2025. Any Plaintiff who was a Plaintiff in *Wynne v. NYC*, Case No. 1:23-cv-9955 (S.D.N.Y) but not a Plaintiff in *Torres*, seeks backpay and liquidated damages on Count II commencing August 22, 2024. Any Plaintiff who did not participate in either *Wynne* or *Torres* seeks backpay and liquidated damages three years back from the date that the Plaintiff's consent to sue form was filed in Court for Defendant's willful violation of the FLSA.

70.    Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their back pay damages for the Defendant's failure to pay overtime compensation.

71.    Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT III

### FAILURE TO PAY FLSA OVERTIME TIMELY BY PAYING FOR OVERTIME WEEKS OR MONTHS AFTER THE OVERTIME WAS WORKED

72.    Plaintiffs hereby incorporate by reference all preceding Paragraphs in their entirety and restate them herein.

73.    The FLSA mandates that overtime compensation be paid on the regular payday for the period in which such workweek ends. Overtime payments under the FLSA may not be delayed except as reasonably necessary to compute the amount owned, and in no event shall such payments be delayed beyond the next payday after such computation can be made. 29 C.F.R. § 778.106. Defendant has violated these basic principles by delaying Plaintiffs' overtime payments for working in excess of 40 hours a week by weeks, and in some cases months, with such delay not being reasonably necessary to compute Plaintiffs' overtime pay, but rather because of a failure by management personnel to approve overtime payments or due to management withholding such payments until the next budgetary quarter.

74.    As this court recently recognized in *Accosta, et al. v. Lorelei Events Grp. Inc., et al.*, No. 7:17-cv-07804-NSR (S.D.N.Y. Jan. 21, 2022), "while 'the Second Circuit has no bright line rule for determining what qualifies as an 'unreasonable' amount of time for an employer to delay paying its employees,' several courts have held that it is a violation of the FLSA to withhold employees' overtime such that 'two weeks is an unreasonable amount of time for an employer to

20

delay a paycheck.'" (quoting *Coley v. Vannguard Urban Improvement Ass'n, Inc.,* No. 12-CV-5565 (PKC), 2018 U.S. Dist. LEXIS 50787 (E.D.N.Y. Mar. 29, 2018)). Here, Defendant's failure to pay Plaintiffs FLSA overtime pay timely and their withholding of such overtime payments violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.106.

75.     As a result of the Defendant's systemic, continuing, willful, and purposeful violations of the FLSA, there have become due and owing to the Plaintiffs an amount that has not yet been precisely determined.[4] The employment and payroll records for the Plaintiffs are in the exclusive possession, custody and control of Defendant and their public agencies, and Plaintiffs are unable to state at this time the exact amount owing to them, but from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to Plaintiffs and other employees similarly situated from which the amount of Defendant's liability can be ascertained.

76.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their backpay damages for the Defendant's failure to pay overtime compensation as alleged herein.

77.     Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and

---

[4] Any Plaintiff who was also a Plaintiff in *Torres v. NYC,* Case No. 1:24-cv-9304 (S.D.N.Y.), seeks backpay and liquidated damages on Count III commencing December 2, 2025. Any Plaintiff who was a Plaintiff in *Wynne v. NYC*, Case No. 1:23-cv-9955 (S.D.N.Y) but not a Plaintiff in *Torres*, seeks backpay and liquidated damages on Count III commencing August 22, 2024. Any Plaintiff who did not participate in either *Wynne* or *Torres* seeks backpay and liquidated damages three years back from the date that the Plaintiff's consent to sue form was filed in Court for Defendant's willful violation of the FLSA.
.

costs under 29 U.S.C. § 216(b).

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand that their claims be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court:

(a) Order a complete and accurate accounting of all the compensation to which the Plaintiffs and those similarly situated are entitled;

(b) Award Plaintiffs and all others similarly situated backpay and monetary liquidated damages equal to their unpaid compensation;

(c) Award Plaintiffs and all others similarly situated interest on their unpaid compensation;

(d) Award Plaintiffs and all others similarly situated their reasonable attorneys' fees to be paid by the Defendant, and the costs and disbursements of this action; and

(e) Grant such other relief as may be just and proper.


Date: June 9, 2026

Respectfully submitted,

*s/ Sarah M. Block*
Molly A. Elkin (*Pro Hac Vice Forthcoming*)
Sarah M. Block
Patrick Miller-Bartley (*Pro Hac Vice Forthcoming*)
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
mae@mselaborlaw.com
smb@mselaborlaw.com
pmb@mselaborlaw.com

22

*s/ Hope Pordy*
Hope Pordy
Elizabeth Sprotzer
SPIVAK LIPTON LLP
1040 Avenue of the Americas
20th Floor
New York, NY 10018
Phone: (212) 765-2100
hpordy@spivaklipton.com
esprotzer@spivklipton.com

*Counsel for Plaintiffs*

23